In re Jereld Joe MICHAEL, a/k/a Jerry Michael, and Shirley Kay Michael, Debtors.

Craig MARTINSON, Trustee, Plaintiff,

v.

Jereld Joe MICHAEL, a/k/a Jerry Michael, and Shirley Kay Michael, Defendants.

Bankruptcy No. 91–10114–7.
Adv. No. 91/00163.

United States Bankruptcy Court, D. Montana.

June 15, 1995.

Floyd A. Brower, Roundup, MT, for debtors/defendants.

## ORDER

JOHN L. PETERSON, Chief Judge.

After due notice a hearing was held at Billings on June 12, 1995, on the Trustee's motion, filed May 23, 1995, to settle and compromise Trustee's objection to the Debtors' homestead exemption and complaint for turnover thereof, in return for a total settlement paid to the Trustee in the amount of $1,450. No objection was filed, and no appearance was made at the hearing in opposition to the settlement. The Trustee appeared at the hearing in support of approval. The Debtors were represented by counsel in

support. No testimony or exhibits were admitted into evidence. Argument of counsel was heard. Upon review of the settlement and research into the applicable case law, this Court concludes, notwithstanding the agreement between the parties, that the terms of the settlement are not fair and equitable for the creditors as required for approval of settlements under F.R.B.P. 9019(a). Therefore, for the reasons set forth below, the Trustee's motion to settle and compromise is denied.

■ This matter of the Trustee's objection to the Debtors' homestead exemption is once again before this Court on remand from the Bankruptcy Appellate Panel (BAP) of the Ninth Circuit to consider the issue of whether the Debtors could amend their schedules post-petition under the Federal Rules of Bankruptcy Procedure to claim a homestead exemption. *Michael v. Martinson, (In re Michael)*, 49 F.3d 499, 502 (9th Cir.1995) (per curiam).[1] There are no disputed material issues of fact in this case, and the facts are set forth by the BAP in *Michael* as follows:

> When the Michaels filed their voluntary Chapter 7 bankruptcy petition, they had not yet recorded a declaration of homestead as required by Mont.Code Ann. §§ 70–32–105, 106, 107. They also failed to list their home as exempt property on their bankruptcy Schedule B–4. Several months later, after the bankruptcy court had ordered the Michaels' debts discharged, they recorded a declaration of homestead in Yellowstone County and filed an amended Schedule B–4 with the bankruptcy court, listing their home as exempt property. The trustee objected to the amendment and brought this adversary proceeding to obtain possession of the home.

*Michael,* 49 F.3d at 500.

*Michael,* however, specifically left open the question whether the Debtors could amend

their schedules under the Rules to claim the homestead exemption. *Id.* at 502. The matter has been submitted on stipulated facts, and briefs are yet to be filed by each party on whether the Debtors may amend their schedules post-petition to claim a homestead exemption. Presently, the parties seek approval of a compromise settlement whereby in return for the Trustee's withdrawal of objection to and request for turnover of the Debtors' claimed homestead property, the Debtors shall release from any claim of exemption and pay to the Trustee the sum of $1,000, plus the Trustee shall retain for the estate the sum of $450 previously received from Farm Credit Services for the benefit of the estate.

■ This Court summarized the test for approval of compromises under F.R.B.P. 9019(a) in *In re Pierce Packing*, 13 Mont. B.R. 255, 256, 1994 WL 831374 (Bankr.Mont. 1994):

> This Court addressed the tests for compromise and settlement under F.R.B.P. Rule 9019(a) in *In re Schrock*, 9 Mont.B.R. 414, 416–417, 1995 WL 462182 (Bankr.Mont. 1991) as follows:
>
> > In *In re Pierce Packing Company*, 6 Mont.B.R. 179, 179–80 (Bankr.Mont. 1988) and *In re Haddock*, 6 Mont.B.R. 263, 264–65 (Bankr.Mont.1988), this Court adopted the test set forth in *In re A & C Properties*, 784 F.2d 1377 (9th Cir.1986), for approval of a compromise settlement.
>
> Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.' *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir.1988) (Citing *Martin v. Kane (In re A & C Properties)* 784 F.2d 1377, 1380–81 (9th Cir.) *cert. denied sub nom. Martin v.*

1. The Ninth Circuit in *Michael* settled once and for all the issue of whether the Trustee may exercise the "strong arm" powers of 11 U.S.C. § 544(a) to defeat a homestead exemption, by holding that the "trustee may not use any of his 'strong arm' powers under section 544(a) to defeat the Michaels' homestead exemption." 49 F.3d at 502. Earlier, the Ninth Circuit BAP had declined to consider whether the Trustee's strong arm powers under § 544(a)(3) could defeat a

homestead exemption. *In re Gitts*, 116 B.R. 174, 179 n. 9 (9th Cir. BAP 1990). Having eliminated § 544(a) from the case still does not end the matter, however, because the Trustee objected to the Debtor's amended Schedules which claimed a homestead exemption, on the grounds the Debtors failed to file a declaration of homestead before the petition date as required by Montana law and the Bankruptcy Code.

*Robinson,* 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986)). In evaluating a settlement, the Court must consider:

'(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views of the premises.' *A & C Properties,* 784 F.2d at 1381.

*Woodson,* 839 F.2d at 620 (additional citation omitted).

*See also, In re MGS Marketing,* 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C properties [Properties],* it is also well established that the law favors compromise. *In re Blair,* 538 F.2d 849, 841 [851] (9th Cir.1976). In accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills,* 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.,* 13 B.R. 764, 765 (Bankr.N.D.Ga.1981). *See also, In re Lions [Lion] Capital Group,* 49 B.R. 163, 175–76 (Bankr. S.D.N.Y.1985).

Applying the *A & C Properties* factors, this Court concludes that the proposed settlement is not fair and equitable. First, the Court concludes that the probability of success on the merits weighs against settlement, because the Trustee has a significant probability of success on the merits. The material facts are uncontroverted that the Debtors failed to file a declaration of homestead as required by Montana law to establish their right to a homestead exemption before the bankruptcy petition date. Mont.Code Ann. § 70–32–105, 106, 107; *Michael,* 49 F.3d at 500.

■ In deciding whether the Debtors may amend their Schedules to claim a home-stead exemption when no declaration of homestead was filed as of the petition date, the analysis must begin with the general rule that the "right to exemptions under the Bankruptcy Code, like the Bankruptcy Act, is generally determined by facts as they existed on the date bankruptcy was filed." *In re Gitts,* 116 B.R. 174, 178 (9th Cir. BAP 1990), *aff'd* 927 F.2d 1109 (9th Cir.1991); *In re Combs,* 101 B.R. 609, 614 (9th Cir. BAP 1989); *In re Magallanes,* 96 B.R. 253, 255 (9th Cir. BAP 1988); *Love v. Menick,* 341 F.2d 680, 682 (9th Cir.1965). If this general rule is to apply, the Debtors must lose because they did not have a valid homestead exemption under Montana law on the petition date. The Court looks to Montana homestead law to determine the estate's interest in property such as the homestead. *In re Campbell,* 14 Mont.B.R. 132, 141 (9th Cir. BAP 1995).

■ In Montana, unlike Washington which has an automatic homestead exemption based upon possession alone, *Gitts,* 116 B.R. at 178, 180, if there is not compliance with the recordation statutes there is no valid homestead exemption. *Harvey v. Havener,* 135 Mont. 437, 443, 340 P.2d 1084, 1087 (1959) ("The spirit of all recordation acts is notice to protect others against secret equities. If the record is not necessary to create the estate (*as it is in the manner of homestead exemptions* and mechanics' liens) the statute providing for recording is but a direction to do certain acts and does not create conditions subsequent.") (Emphasis added). Not having filed a declaration of homestead as of the petition date, under Montana law the Debtors do not have a valid homestead exemption.

On the other hand, if there is an applicable exception to the general rule that the petition date controls whether there is a valid exemption, it is for the Debtors to support such an exception. The Court finds no credible support for such an exception. Thus far, they contend they have the right to file a declaration of homestead as a substantive right under Montana law allowing a valid homestead exemption to be filed up to the actual date of

an execution sale[2], citing *Myers v. Matley,* 318 U.S. 622, 63 S.Ct. 780, 87 L.Ed. 1043 (1943). *See, Gitts,* 116 B.R. at 179. To resolve this issue requires a background discussion of the procedure for claiming exemptions and amendments under both former and current bankruptcy law, and applicable Montana state law.

In order for the Debtors to claim an exemption under the Rules of Bankruptcy Procedure, they must comply with the specific rule governing exemptions, F.R.B.P. 4003. In turn, the Debtors must comply with the requirements of 11 U.S.C. § 522(b)[3]. The United States Supreme Court succinctly summarized the procedure to be followed in claiming exemptions in *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992):

> When a debtor files a bankruptcy petition, all of his property becomes property of a bankruptcy estate. See 11 U.S.C. § 541. The Code, however, allows the debtor to prevent the distribution of certain property by claiming it as exempt. Section 522(b) allowed Davis to choose the exemptions afforded by state law or the federal exemptions listed in § 522(d). Section 522(1) states the procedure for claiming exemptions and objecting to claimed exemptions as follows:

> "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in interest objects, the property claimed as exempt on such list is exempt."

Although § 522(1) itself does not specify the time for objecting to a claimed exemption, Bankruptcy Rule 4003(b) provides in part:

> "The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) ... unless, within such period, further time granted by the Court."

The solution to the instant dispute lies in the simple language of *Taylor* that all of the Debtors' property, including their homestead, became property of the estate under the broad scope of § 541(a). *Id.; Campbell,* 14 Mont.B.R. at 141; *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983); *Gitts,* 116 B.R. at 176 n. 4. Property that is to be claimed as exempt is included as property of the estate by § 541(a). *Taylor,* 503 U.S. at 642, 112 S.Ct. at 1647; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977) U.S.Code Cong.Admin.News 1978 pp. 5787, 5963, 6173.

---

**2.** Montana law changed in 1981 with the amendment to Mont.Code Ann. § 70–32–202, which removed prior judgment liens from the list of judgments which could subject a homestead to execution or forced sale in satisfaction thereof. R.C.M.1947, 33–105, *amended* Sec. 6, Ch. 370, L.1981.

**3.** 11 U.S.C. § 522. Exemptions

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (1) and the other elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, *or State or local law that is applicable on the date of the filing of the petition* at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law. (Emphasis added).

This is a major change from the treatment of exempt property under the former Section 70(a) of the Bankruptcy Act, which excepted exempt property from property of the estate. *Myers v. Matley*, 318 U.S. at 624–25, 63 S.Ct. at 782;[4] *Gitts* 116 B.R. at 176 n. 4. Nevertheless, it is clear from the language of § 541, *Taylor, Gitts,* and the above-cited legislative history that this change has taken effect, and that § 541(a) made the Debtors' homestead property of the estate on the petition date regardless of whether it is exempt or not. Because the Debtors' homestead became property of the estate automatically by operation of § 541(a), it did not fall upon the Trustee to affirmatively exercise the "strong arm" powers of 11 U.S.C. § 544(a) to bring the homestead into the estate.

By contrast, the holdings of *Myers* and *White v. Stump*, 266 U.S. 310, 312–13, 45 S.Ct. 103, 103–04, 69 L.Ed. 301 (1924) hinged upon § 70(a) of the Act and its exception of exempt property from property of the estate. In both cases, before the enactment of the Code's § 541(a), the trustees attempted to utilize their lien avoidance powers to bring the exempt homesteads into the estate. *Myers*, 318 U.S. at 624–25, 63 S.Ct. at 782; *White*, 266 U.S. at 312–13, 45 S.Ct. at 103–04.

The trustee failed in *Myers* because Nevada law allowed the filing of a homestead declaration at any time up to the actual date of execution sale. 318 U.S. at 627–28, 63 S.Ct. at 783–84. Thus, the trustee's lien creditor rights could not defeat the debtor's right to file a declaration of homestead up to the date of sale. 318 U.S. at 627–28, 63 S.Ct. at 783–84. Montana law is now the same in regard to a homestead declaration vis-a-vis a judgment lien creditor.[5]

Simply put, however, none of *Myers'* lien creditor reasoning is applicable to the instant case, because § 541(a) brings exempt property into the estate without resort to the trustee's lien creditor rights under § 544(a). Whether or not Montana law allows a debtor to defeat a lien creditor by filing a homestead declaration up to the date of execution sale has nothing to do with the instant case, where the Debtors' homestead became property of the estate on the petition date by operation of § 541, not by operation of the Trustee's lien creditor rights.[6] To the extent *White* and *Stump* remain good law, they support the Trustee because they stress the importance of the petition date in determin-

---

**4.** The Ninth Circuit Court decision affirmed in *Myers* noted that § 70(a) of the Act excepted property which is held to be exempt without reference to a specific point in time. *Myers v. Matley*, 130 F.2d 775, 777 (9th Cir.1942). The references in the Code at § 541(a) and § 522(b) to the petition date, a specific point in time, show a marked departure from the Act.

**5.** See footnote 2 above.

**6.** The BAP criticizes and disagrees with this Court's reasoning and interpretation of *Myers* in *Gitts*, 116 B.R. at 179. The BAP states: "The key to the holding in *Myers* is whether a state's law allowed a debtor to effectively claim a homestead exemption by filing a declaration of homestead after recordation of the judgment lien but prior to an execution sale. The [*In re Peterson*, 106 B.R. 229, 232 (Bankr.D.Mont.1989)] case completely ignores this point." 116 B.R. at 179. While that may have been key to the holding of *Myers*, § 541(a) makes the trustee's lien creditor rights against exempt property irrelevant by including exempt property in property of the estate. With § 541(a), the Trustee need not exercise lien creditor rights to bring exempt property into the estate. The BAP recognized this in *Gitts*, 116 B.R. at 176 n. 4, but noted the debtor may

remove exempt property from the estate under § 522(b). *Id.* While an automatic homestead exemption contained in Washington state statutes may remove a homestead from property of the estate as of the petition date in compliance with § 522(b), Montana has no equivalent automatic homestead exemption statute.

On the petition date, the Michaels simply did not have a valid homestead exemption under Montana law and § 522(b). Post-petition amendment and recordation of a homestead declaration (if not stayed by § 362(a)(3)—see below) does not relate back to change the circumstances under the general rule under § 522(b) as of the petition date. With all due respect, this Court is at a loss to understand why the BAP would insist on analyzing these facts under § 70(a) of the former Act and cases such as *Myers* construing the trustee's lien creditor rights on the petition date against exempt property, instead of looking to § 541(a) and § 522(b) and cases construing the Bankruptcy Code's treatment of exempt property. To this Court, the "key" to the holding of *Myers* regarding a debtor's right to defeat a judgment lien by filing a declaration of homestead up to the date of execution sale, has no effect on the operation of § 541(a) and cannot extend that right beyond the petition date under § 522(b).

ing exemptions. 266 U.S. at 313, 45 S.Ct. at 104; 318 U.S. at 624, 63 S.Ct. at 782.

In bringing the instant adversary proceeding and objecting to the Debtors' homestead exemption, the Trustee asserted the homestead was property of the estate and the Debtors had failed to file a declaration of homestead prior to the petition date. As such, the Trustee was not necessarily asserting only the avoidance powers under § 544, as indeed we now know is not the operative statute. *See, Gitts,* 116 B.R. at 179 & n. 9; *Michael,* 49 F.3d at 501–02. Rather, the Trustee was acting as the representative of the estate under § 323, with the capacity to sue and be sued.

This Court adopts the following reasoning from *In re Van Rye,* 179 B.R. 375, 378 (Bankr.D.Mass.1995):

> As the representative of the estate, trustee had a definite property interest in whether property of the debtor's estate was allowed as exempt property. The trustee had a duty to collect the property of the estate. 11 U.S.C. § 704. That duty inevitably involved determining what property was exempt.

> This Court agrees with the reasoning of the [*National Bank of Mobile v. Norris,* 701 F.2d 902 (11th Cir.1983) ] court that a trustee is a proper "party in interest" to file an objection to exemptions claimed by a debtor. See *In re Brooks,* 12 B.R. 22, 24 (Bankr.S.D.Ohio 1981) ("[T]he question of what is or what is not exempt property is inextricably interwoven with the duties of the trustee to so collect and reduce to money the property of the estate.").

In performance of the duties under § 704, the Trustee also has a fiduciary duty to all creditors of the estate to protect their interests against dissipation of any assets of the estate. *Matter of Troy Dodson Const. Co., Inc.,* 993 F.2d 1211, 1216 (5th Cir.1993); *In re Rigden,* 795 F.2d 727, 730 (9th Cir.1986) (Trustee has the duty to maximize distribution to creditors). Indeed, if the Trustee failed to object to the Debtors' post-petition amendment and recordation of homestead declaration, the Trustee might well be liable for a negligence claim by the creditors for loss of those funds. *See, In re United Ins.*

*Management, Inc.,* 14 F.3d 1380, 1386 (9th Cir.1993).

■ Returning to *Taylor* and its application to the instant case, when the Debtors filed their bankruptcy petition all their property, including their homestead, became property of the estate. But, by the petition date they had not recorded a declaration of homestead as required by Montana law. Therefore, this Court holds that on the petition date the Debtors did not have a valid homestead exemption under § 522(b) and Montana law. The Court need not consider post-petition occurrences in determining exemption rights. *Gitts,* 116 B.R. at 178–79; *In re Combs,* 166 B.R. 417, 420 (Bankr. N.D.Cal.1994) (citing *Combs,* 101 B.R. at 614–15).

Several months after the petition date the Debtors recorded a declaration of homestead and an amended Schedule B–4 asserting a homestead exemption, to which the Trustee timely objected. As a preliminary matter, this Court sees little merit in the Debtors' argument that the Trustee's objection was untimely because the Trustee was aware of the Debtors' intention to claim a homestead exemption at the § 341 meeting. *Taylor* clearly places the burden upon debtors to file a list of property claimed as exempt before any objections are required. 112 S.Ct. at 1647.

With the clear language of § 541(a) and § 522(b)(2)(A) and consistent case law, including the general rule stated in *Gitts* and *Combs* emphasizing the petition date as the date for determining exemptions, the Debtors have a heavy burden of citing authority for the proposition that their declaration of homestead, filed several months after the petition, could support an exemption. Thus far, they have not satisfied that burden.

The Supreme Court advised in *Connecticut National Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) in statutory interpretation:

> While courts should disfavor interpretations of statutes that render language superfluous, in this case that canon does not apply.

In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. See, *e.g., United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–242, [109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290] (1989); *United States v. Goldenberg,* 168 U.S. 95, 102–103 [18 S.Ct. 3, 4, 42 L.Ed. 394] (1897); *Oneale v. Thornton,* 6 Cranch 53, 68 [3 L.Ed. 150] (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430 [101 S.Ct. 698, 701, 66 L.Ed.2d 633] (1981); see also *Ron Pair Enterprises, supra,* [489 U.S.] at 241 [109 S.Ct. at 1030].

Section 541(a) and 522(b)(2)(A) are unambiguous in requiring that exemptions be determined as of the petition date, i.e., the commencement of the case. The legislative history further specifically supports § 541(a)'s change in treatment of exempt property under the Bankruptcy Code versus under Section 70(a) of the Act. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977) U.S.Code Cong.Admin.News 1978 pp. 5787, 5963–6173; *Dewsnup v. Timm,* 502 U.S. 410, 419–20, 112 S.Ct. 773, 779–80, 116 L.Ed.2d 903 (1992).

Likewise, Montana law is unambiguous in requiring a recorded declaration of homestead for a valid homestead exemption. Mont.Code Ann. §§ 70–32–105, 70–32–106, and 70–32–107; *In re Doss/Spurlock,* 10 Mont.B.R. 159, 160, 162–63 (Bankr.Mont. 1991); *In re Peterson,* 106 B.R. 229, 231 (Bankr.D.Mont.1989). There is no automatic homestead exemption in Montana as in Washington. *Gitts,* 116 B.R. at 178. Normally, the Bankruptcy Code will be construed to adopt, rather than to displace, preexisting state law. *BFP v. Resolution Trust Corporation,* —— U.S. ——, —— – ——, 114 S.Ct. 1757, 1764–65, 128 L.Ed.2d 556 (1994); *Patterson v. Shumate,* 504 U.S. 753, 758, 112

S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) ("Congress, when it desired to do so, knew how to restrict the scope of applicable law to 'state law' and did so with some frequency.... 11 U.S.C. § 522(b)(1) (election of exemptions controlled by 'the State law that is applicable to the debtor')"). Rather than displacing Montana law, § 522(b)(2)(A) specifically adopts applicable Montana law in determining whether the Debtors are entitled to a homestead exemption on the petition date. It is for the Montana legislature, not a court, to enact an automatic homestead exemption like Washington's if it desires one. To date the Montana legislature has not enacted an automatic homestead exemption, and thus *Gitts* is of little support to the Debtors.

Some support for the Debtors' right to amend the schedules to claim a homestead exemption may be found in the general right to amend found at F.R.B.P. 1009(a), which permits a schedule to be amended by a debtor "as a matter of course at any time before the case is closed." The Trustee expressed concern about this right to amend at hearing, characterizing it as absolute.

■■■■■ Amendments should be liberally allowed at any time absent a showing a bad faith or prejudice to third parties. *Magallanes,* 96 B.R. at 256. However, exceptional circumstances may prevent a debtor from amending schedules. *Id.* (citing cases). Here, if the Debtors are allowed to claim a homestead exemption through post-petition amendment of schedules, the unsecured creditors will be prejudiced by denial of proceeds of the Debtors' homestead to which they are entitled as property of the estate.

Even more important, allowing an exemption by amendment under Rule 1009 would require that the Court ignore the language of § 522(b) which requires that exemptions be determined under state law as of the petition date. Bankruptcy Rules are presumptively valid if they are not inconsistent with the statute. *Dominguez v. Miller (In re Dominguez),* 51 F.3d 1502, 1506 (9th Cir.1995). If a Rule is inconsistent with the Code, this Court is privileged to determine the Rule "unenforceable because of and to the extent of any inconsistency with a statute. 28 U.S.C.

§ 2075; *In re Moralez,* 618 F.2d 76, 6 B.C.D. 518 (9th Cir.1980)." *In re Lane,* 37 B.R. 410, 414 (Bankr.E.D.Va.1984). Rule 1009 establishes a "general" right to amend schedules. This Court will not construe it to deny effect to the petition date language in § 541(a) and § 522(b).

The Supreme Court advises in *Rake v. Wade,* — U.S. —, —, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993):

> We generally avoid construing one provision in a statute so as to suspend or supersede another provision. To avoid "deny[ing] effect to part of a statute," we accord " 'significance and effect ... to every word,' " *Ex parte Public Nat. Bank of New York,* 278 U.S. 101, 104 [49 S.Ct. 43, 44, 73 L.Ed. 202] (1928) (quoting *Washington Market Co. v. Hoffman,* 101 U.S. 112, 115 [25 L.Ed. 782] (1879)).

▪ To give effect to every word of § 522(b)(2)(A), this Court will likely decline to allow the Debtors to claim a homestead exemption by post-petition amendment of their schedules when they did not have a valid homestead exemption on the petition date.

▪ In addition to § 541(a), there is a second relevant provision of the Bankruptcy Code which prevents the Debtors from claiming a homestead exemption. The filing of a bankruptcy petition "operates as a stay, *applicable to all entities,* of ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (emphasis added); *In re Pace,* 159 B.R. 890, 899–90 (9th Cir. BAP 1993). "Entity" is defined at 11 U.S.C. § 101(15) and "includes person, estate, trust, governmental unit, and United States Trustee."

Given such unambiguous statutory language, there can be little argument that the Debtors are entities as defined at § 101(15). There can also be little doubt that the Debt-

ors, in seeking to exempt from property of the estate their homestead by recording the post-petition declaration of homestead, acted "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3). As such, this Court holds that the Debtors are entities subject to the automatic stay under § 362(a)(3) against recording their post-petition declaration of homestead.

▪ The automatic stay "is designed to protect the debtor, the assets of the estate, *and the interests of other creditors in those assets."* *United States v. Hemmen,* 51 F.3d 883, 891 (9th Cir.1995) (citing *Laughlin v. IRS,* 912 F.2d 197, 198 (8th Cir.1990)) (emphasis added). In this case the Debtors acted to obtain or exercise control over property of the estate when they recorded their declaration of homestead post-petition. In so doing they acted against the interests of creditors in that asset. Section 362(b) contains specific exceptions to the stay, none of which are applicable to the Debtors' post-petition attempt to exempt their homestead from property of the estate. That indicates Congress knew how to create exceptions to the stay, but did not include as an exception debtors seeking to create exemptions. This Court holds that the Debtors' post-petition recordation was stayed by the automatic stay of § 362(a)(3).[7]

In the Ninth Circuit actions taken in violation of the automatic stay are void rather than voidable. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Assoc.,* 997 F.2d 581 (9th Cir. 1993). Thus, Debtors' post-petition recordation of the declaration of homestead is void as a violation of § 362(a)(3). Since that recordation is void, it is futile to permit the Debtors to amend their schedules, because they cannot create a valid homestead declaration under Montana law at this late date. This Court will not permit futile amendment.

In summarizing the first *A & C Properties* factor, the Court finds the probability of

---

**7.** The Court notes that there is case law which states that actions by debtors which would benefit the estate are not stayed by § 362. *In re Merrick,* 175 B.R. 333, 337 n. 6 (9th Cir. BAP 1994) (citing cases). These cases are clearly distinguishable by their facts from the instant case, because the Debtors' post-petition recordation of the declaration of homestead cannot be interpreted as for the benefit of the estate. To the contrary the Debtors' recordation was for their own benefit, and directly opposed to the creditors' interest in the homestead property.

success on the merits in the litigation weighs against the settlement. The Trustee is almost certain to prevail. The second *A & C Properties* factor is the difficulties, if any, to be encountered in the matter of collection. The Court finds this factor weighs against settlement. The property in question is real property which can be sold under normal procedure by the Trustee.

The third *A & C Properties* factor is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it. This litigation is near its end, and little complexity remains. The facts are simple and stipulated. The law has been to a large part researched, except for the final briefs. While there may be further delay upon appeal, this Court finds that the third factor weighs against settlement.

The fourth factor is the paramount interest of the creditors and a proper deference to their reasonable views of the premises. The settlement proposes $1,450 for the creditors, while if the Trustee prevails they will get a portion of the equity in the property. The record does not show what that amount is. The parties counsel estimated that the equity ranges from $14,000 to $30,000. Whatever it is it must be reduced by the Trustee's attorney's fees and costs in litigating this matter for the estate. In all fairness, further adjustment may be considered for Debtors' post-petition mortgage payments, balanced against reasonable rent offset.

The Trustee stated that in the event the $1,450 settlement is approved, the Trustee's attorney would take a 40% contingency fee. Costs total $200 and the Trustee's fee would further reduce the amount to creditors to a few hundred dollars. Therefore, the fourth factor is unclear, but if there is substantial equity in the property this factor, like the others, weighs against approval of settlement. While disagreeing on the amount, counsel indicate there is significant equity.

In conclusion, despite the policy in favor of settlement, this Court finds that the proposed settlement is not fair and equitable to the unsecured creditors after consideration of the *A & C Properties* factors, and therefore fails the requirements for approval of settlements of Rule 9019(a).

The Court is aware of the potential hardship this decision imposes on the Debtors and Debtors' counsel. However, this settlement simply does not pass muster under federal or state law because the amount offered in the settlement is not fair and equitable to the creditors.[8]

IT IS ORDERED the motion to settle and compromise, filed May 23, 1995, is denied.

IT IS FURTHER ORDERED the parties are allowed to June 26, 1995, in which to file any memoranda in support or opposition to the objection of the Trustee to the Debtors' amendment to Schedule B–4.

---

8. Debtors' counsel indicated at hearing that only one creditor, whose claim is disputed and totals around $10,000 based upon a milk contract, remains unpaid. If that be the case, and since 11 U.S.C. § 706(a) gives the Debtors an absolute right to convert this previously unconverted Chapter 7 case to a case under Chapter 13 at any time, perhaps the Debtors could address the single remaining claim through claims litigation or through treatment under a Chapter 13 Plan, and thereby retain their homestead under that Chapter rather than Chapter 7. If counsel's statements prove true, it appears that with the equity in the homestead property the remaining claim could be paid through refinancing if it is not disallowed, paying the claim and allowing the Debtors to retain their homestead. Otherwise, the Debtors will lose the property under § 522(a) and Montana law.