**Alison H., p/p/a Donald H.,
Plaintiffs, Appellees,**

v.

**Robert B. BYARD, in his capacity as Superintendent of Schools, and the Belchertown Public School System, Defendants, Appellants.**

**No. 98–1520.**

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1998.

Decided Nov. 25, 1998.

Regina Williams Tate, with whom Mary L. Gallant, and Murphy, Hesse, Toomey & Lehane, were on brief for appellants.

Claire L. Thompson, with whom Doherty, Wallace, Pillsbury and Murphy P.C. were on brief for appellees.

Before BOUDIN, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

This is an appeal by defendants-appellants, the Belchertown Public School System and Robert B. Byard, Superintendent of Schools, from a summary judgment of the district court awarding attorney's fees and costs to plaintiffs-appellees, Alison H., p/p/a Donald H.

The attorney's fees award was the aftermath of a dispute between plaintiffs and defendants over the special education services to be provided Alison H. by defendants. The settlement, which is not attacked by plaintiffs, was entered into prior to a hearing before the Massachusetts Bureau of Special Education Appeals. After settlement, plaintiffs demanded attorney's fees from defendants on the basis that they were the prevailing parties and were therefore entitled to attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B). After defendants rejected the demand for attorney's fees, suit was brought seeking an order awarding plaintiffs attorney's fees.

## I.

Defendants raise five issues on appeal.[1] The only one we discuss is dispositive of the appeal so we do not consider the others, interesting and intriguing as they

---

1. The other issues are: (1) whether plaintiffs' claim was barred by the statute of limitations; (2) whether estoppel barred the fees; (3) whether the plaintiffs were the "prevailing party"; (4) whether the district court's award of attorney's fees for work done during the case was erroneous.

may be. We find and rule that plaintiffs waived the claim to attorney's fees under the terms of the settlement agreement. Because this is an appeal from a grant of summary judgment our standard of review is *de novo*. *DeNovellis v. Shalala*, 124 F.3d 298, 305 (1st Cir.1997); *Dubois v. United States Dep't of Agric.*, 102 F.3d 1273, 1283 (1st Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997); *Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st Cir.1995).

 Plaintiffs cite a host of Massachusetts cases to the effect that "abuse of discretion" is the standard of review in Massachusetts. Because the standard of review is a procedural matter, not a substantive one, we are bound by federal law. It makes no difference, however, in this case because we rule that the district court made an error of law on the issue before us. This constitutes an abuse of discretion. In *Klonoski v. Mahlab*, 156 F.3d 255, 276 (1st Cir.1998), in which we said:

> As the Supreme Court has stated, '[a] district court by definition abuses its discretion when it makes an error of law.' *Koon v. United States*, 518 U.S. 81, 94–102, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *see United States v. Marroquin*, 136 F.3d 220, 223 (1st Cir.1998); *Golas v. HomeView, Inc.*, 106 F.3d 1, 3 (1st Cir.1997).

### The Facts

Alison H. is a minor female who resides with her parents in Belchertown, Massachusetts. The Belchertown Public School System is responsible for providing special education to students with learning disabilities. It began providing special education services to Alison at the beginning of the fifth grade; they were discontinued halfway through grade five. From then on, Alison's parents had a running dispute with the school as to the special education services Alison should receive and where they would be given. No agreement could be reached on an appropriate individualized educational plan (IEP) for Alison.

On January 30, 1996, plaintiffs retained Attorney Claire Thompson to represent them in the dispute with the school. She filed a request for a hearing with the Bureau of Education Appeals. Thereafter Attorney Thompson negotiated for the parents on the question of an appropriate IEP for Alison. During the negotiations, the plaintiffs made clear that they thought that White Oak School was the most appropriate placement for Alison and would meet their IEP demands. White Oak School is a private institution specializing in special education for children with learning disabilities.

Defendants sent a proposed new IEP for Alison on June 28, 1996 to Attorney Thompson. She replied on July 31, 1996, making additional demands and proposing further conditions. On August 21, 1996, the attorney for the school faxed the following letter to Attorney Thompson:

> Rick McInerney received a copy of your letter in which you requested additional changes in the IEP for Allison. After Mr. McInerney's review of your letter and requested changes, he came to the conclusion that it was unlikely that you or your clients would ever be satisfied with the IEP developed by Belchertown or the educational program provided by Belchertown. Therefore, he contacted White Oak School in order to ascertain if it had an available place for Allison to attend school starting in September 1996. He has confirmed that White Oak does have a space available for Allison and therefore, would offer to Mr. and Mrs. H. the opportunity for Allison to attend White Oak for the 1996–1997 school year. *As a condition of finalizing this agreement, Belchertown would be looking for the withdrawal of the request for hearing,* which hearing is scheduled for September 11, 1996, *as well as a release of any and all claims arising prior to the execution of the agreement.* If your clients are interested in this offer, please contact me by Friday, August 23, 1996, since White Oak is requiring an answer by that date in order to continue to hold a place for Allison for the 1996–1997 school year.
>
> Should you have any further questions, please feel free to contact me.

(Emphasis added.)

Within a matter of hours Attorney Thompson replied by fax:

On behalf of Don and Judy H., I hereby accept Belchertown's offer to place Alison at White Oak School for the 1996–1997 school year. Please forward a new I.E.P. for the H's signature.

The school prepared a new IEP for Alison's attendance at White Oak School. It was accepted by the parents on September 3, 1996. The scheduled hearing before the Bureau of Special Education Appeals was canceled. Alison attended White Oak School for the 1996–97 school year. Belchertown School paid a total of $22,295.20 for Alison's tuition and transportation.

By letter dated November 6, 1996 Attorney Thompson asked that Belchertown School pay her attorney's fees "totaling $6,112.40 through August 26, 1996." The letter also stated:

> Unless the parties are able to negotiate settlement *by November 30, 1996*, I will be compelled to file a Complaint for attorney's fees in U.S. District Court. (Emphasis in original.)

Belchertown rejected the demand for attorney's fees. Defendants took the position that plaintiffs had waived any claim for attorney's fees by accepting Belchertown's offer to place Alison in White Oak School. Plaintiff's complaint asserting their right to attorney's fees was filed on December 6, 1996.

## II.

■ The issue is a classic one of contract construction: did plaintiffs' acceptance of Belchertown's offer to place Alison in White Oak School subject to the condition that there be "a release of any and all claims arising prior to the execution of the agreement" constitute a waiver of plaintiffs' claim for attorney's fees. The district court ruled that there was no waiver. After finding that the plaintiffs were the prevailing parties, it stated:

> Second, I do not believe that there was any waiver here. There was never a release sent by the defendants to the plaintiffs. The language refers to things oc-

curring prior to this agreement while the entitlement to attorney's fees did not really arise until after the agreement was executed. The drafting was ambiguous and my normal tenets of construction is that these ambiguities should be construed in the plaintiffs' favor and against the drafter.

> In addition, the plaintiffs' response to the offer, it seems to me, clearly only accepted the offer to place Alison at White Oak School and did not even purport to give up anything else, so there was no waiver.

With respect, we disagree. We analyze the ruling sentence by sentence. It is true that a release was never sent by defendants to plaintiffs for execution. It would have been better if this had been done. But the offer letter neither states nor suggests that a release would be sent. We think, moreover, that the plain and unambiguous language of the offer meant that acceptance by the plaintiffs meant they had released the defendants from "any and all claims arising prior to the execution of the agreement." Surely the phrase "any and all claims" encompasses attorney's fees which are a major factor and bone of contention in this type of litigation. *See, e.g., State of New Hampshire v. Adams*, 159 F.3d 680, 683–84 (1st Cir.1998). *Kathleen H. v. Massachusetts Dep't of Educ.*, 154 F.3d 8, 14 (1st Cir.1998); *Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431, 1439 (10th Cir.1997); *County of San Diego v. California Special Educ. Hearing Office*, 93 F.3d 1458, 1468 (9th Cir.1996).

The next sentence is puzzling. The court, after noting that "[t]he language refers to things occurring prior to this agreement," states that the "entitlement to attorney's fees did not really arise until after the agreement was executed." It is true that a claimant cannot collect attorney's fees in such a case until it prevails, but the amount of the entitlement was based on services rendered prior to execution of the settlement. It is what was asked for in the First Amended Complaint.[2] Paragraph A asks that the court:

---

**2.** Plaintiffs later moved to request attorney's fees for work done subsequent to August 26, 1996.

This motion was granted.

**6**

A. Award the plaintiffs their reasonable attorney's fees and costs in the sum of $6,112.40 *through August 26, 1996;*

(Emphasis ours.)

The court then found the contract ambiguous and construed it in favor of the plaintiffs and against the defendants. We rule to the contrary.

■■■ We realize that the question of ambiguity is a judgment call, but there are established guidelines that lead to a well trodden path. A contract is formed upon acceptance of an offer. *Ismert and Assocs., Inc. v. New England Mut. Life Ins. Co.,* 801 F.2d 536, 541 (1st Cir.1986).

"The question of whether a contract term is ambiguous is one of law for the judge." *Allen,* 967 F.2d at 698; *accord Boston Five Cents Sav. Bank,* 768 F.2d at 8; *Jefferson Ins. Co. v. Holyoke,* 23 Mass. App.Ct. 472, 503 N.E.2d 474, 476 n. 4, *rev. denied,* 399 Mass. 1104, 506 N.E.2d 146 (1987). A contract is not ambiguous simply because litigants disagree about its proper interpretation. *See Papago Tribal Util. Auth. v. FERC,* 723 F.2d 950, 955 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984). Rather, a contract, or a set of documents which in the ensemble comprise a contract, is considered ambiguous only when the language "is reasonably prone to different interpretations." *Fowler v. Boise Cascade Corp.,* 948 F.2d 49, 54 (1st Cir.1991). Stated another way, contract language which "is susceptible to differing, but nonetheless plausible, constructions ... is ambiguous." *Allen,* 967 F.2d at 700; *see also Fashion House, Inc. v. K mart Corp.,* 892 F.2d 1076, 1083 (1st Cir.1989).

*FDIC v. Singh,* 977 F.2d 18, 22 (1st Cir. 1992).

Under Massachusetts law, "[w]here the wording of the contract is unambiguous, the contract must be enforced according to its terms." *Edmonds v. United States,* 642 F.2d 877, 881 (1st Cir.1981). We see no basis for rewriting the contract whether or not, as an original proposition, it could have been better written as [Liberty] now proposes.

*Liberty Mut. Ins. Co. v. Gibbs,* 773 F.2d 15, 17 (1st Cir.1985).

In the final sentence of this ruling, the court held that "the plaintiff's response to the offer ... clearly only accepted the offer to place Alison at White Oak School and did not even purport to give up anything else, so there was no waiver." This reads out of the offer letter the phrase, "as a condition of finalizing this agreement...." One of the conditions was "a release of any and all claims arising prior to the execution of this agreement." It was the plaintiffs who had a duty to object or at least raise a question about the conditions imposed upon them by the offer. Indeed, the last sentence of the offer letter states clearly: "Should you have any further questions, please feel free to contact me."

It was not until long after the new IEP had been accepted (Sept. 3, 1996) and Alison had been placed in White Oak School and the hearing before the Bureau of Special Education Appeals had been dismissed (Sept. 23, 1996) that Attorney Thompson made a demand for attorney's fees (Nov. 6, 1996). If there was going to be a demand for attorney's fees, it should have been made before the clear conditional offer of defendants was accepted. We do not think that plaintiffs should be able take advantage of defendant's clear conditional offer and more than two months later make a demand for attorney's fees.

We hold that the offer letter and its prompt acceptance by plaintiffs constituted a contract between the parties. We rule that the contract was unambiguous. The phrase "a release of any and all claims arising prior to the execution of the agreement" clearly encompasses plaintiff's attorney's fees. Plaintiffs received the benefits of the contract. To enable them to avoid the release obligation of the contract would be unjust and contrary to the basic principles of contract law.

*The judgment below is reversed. Judgment shall enter for the defendants. Costs on appeal awarded to defendants. So ordered.*